UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS JACKSON,

              Plaintiff,                          Hon. Janet T. Neff

v.                                           Case No. 1:14-cv-426

ERICA HUSS, et al.,

              Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment, (Dkt. #25), and Plaintiff's Motion to Defer Defendants' Motion for Summary Judgment, (Dkt. #51). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Plaintiff's motion be **denied** and Defendants' motion be **granted in part and denied in part**.

## BACKGROUND

Plaintiff initiated the present action against one dozen prison employees asserting various claims of unlawful retaliation. (Dkt. #1). Plaintiff's allegations against these defendants are as follows.

A.      Defendant Huss

In May 2013, Defendant Huss stated to Plaintiff that "because [he] was filing grievances against her, she would prolong [his] time in segregation and strip [him] of all his privileges." Huss forced Plaintiff to participate in a prison program entitled "Incentives in Segregation Program." Huss harassed Plaintiff by "observing Plaintiff using the toilet, changing clothes or doing personal hygiene

in his cell." On August 27, 2013, Huss stated to Plaintiff that as long as he continued to write grievances against her, he would not be released from segregation. Huss "also committed retaliation conduct by double locking Plaintiff's cell door to create a fire hazard and instructing staff to destroy Plaintiff's grievances during cell searches."

### B.     Defendant Grandy

On three occasions between October 2013 and February 2014, Defendant Grandy falsified responses to grievances Plaintiff filed. On April 1, 2014, Grandy confiscated certain unidentified items of Plaintiff's personal property. On April 6, 2014, Grandy informed Plaintiff that he would no longer receive a beard trimming during haircuts. Grandy stated that his actions were taken in response to Plaintiff filing prison grievances.

### C.     Defendant Ball

On January 9, 2014, Defendant Ball informed Plaintiff that he would not provide Plaintiff with grievance forms because he "complains too much." Ball "also retaliated by personally observing staff deprive Plaintiff of his meals without taking supervisory action."

### D.     Defendant Corbett

Defendant Corbett denied Plaintiff the opportunity to use the prison recreation yard. Corbett destroyed forms Plaintiff submitted requesting medical treatment. Corbett also read aloud the contents of Plaintiff's medical records thereby enabling prisoners and other staff members to learn of

Plaintiff's medical issues. On April 1, 2014, Corbett confiscated Plaintiff's television. Corbett informed

Plaintiff that she would persist in this conduct so long as Plaintiff continued to file prison grievances.

### E.     Defendant Ackerson

Defendant Ackerson failed to provide Plaintiff with certain prison store items that he

ordered.  Ackerson stated that he undertook this action in response to Plaintiff filing prison grievances.

### F.     Defendant Lewis

Defendant Lewis arbitrarily destroyed certain grievances that Plaintiff submitted.  Lewis

also denied "valid" grievances that Plaintiff submitted.

### G.     Defendant Wood

In May 2013 and November 2013, Defendant Wood "depriv[ed] Plaintiff of attending

disciplinary hearings."  In November 2013, Wood "deliberately positioned herself where she could

directly observe Plaintiff showering nude."  Wood then "made inappropriate sexual statements" to

Plaintiff.  In March 2014, Wood again made inappropriate sexual comments to Plaintiff.  On April 1,

2014, Wood confiscated Plaintiff's television.  Wood stated that "Plaintiff's grievances against her is

what caused the harassment."

### H.     Defendant Nevins

In April 2013, Defendant Nevins told Plaintiff that "he would punch Plaintiff in the face

if Plaintiff file[d] another grievance against him."  In response to certain grievances filed by Plaintiff,

Nevins submitted responses thereto in which he falsely stated that Plaintiff admitted that the allegations in question were false.  Nevins instructed that Plaintiff's mail be forwarded to him so that he could destroy it.

I.      Defendant Jones

In December 2013, Plaintiff discovered that Jones was destroying grievance responses that were being forwarded to Plaintiff.  Jones submitted falsified reports accusing Plaintiff of engaging in rebellious behavior.  In March 2014, Jones refused to provide Plaintiff with toilet paper and blank grievance forms.

J.      Defendant Moran

Defendant Moran "expose[d] Plaintiff's mental health history to other prisoners and officers."  Moran threatened to "inject[] Plaintiff with psychotropic medication and admit[] him to a state hospital" if Plaintiff continued to file grievances against him.  Moran also refused to properly assess Plaintiff's disorders or transfer him to a "proper treatment facility."  Moran undertook these actions in response to a grievance Plaintiff filed alleging that Moran engaged in sexual harassment and was denying Plaintiff adequate mental health treatment.

K.      Defendant Clement

In response to certain grievances filed by Plaintiff, Clement submitted responses thereto in which she falsely stated that she had interviewed Plaintiff about the matters in question.  Clement falsified Plaintiff's trust account statement "in order to prevent Plaintiff from receiving a record of the

mail he sends out of the facility."  In March 2014, Clement stated to Plaintiff that if he filed grievances

against prison staff, he "had better expect retribution."


        L.      Defendant Thebo

        On February 14, 2014, Defendant Thebo directed racial slurs at Plaintiff.  From February

14, 2014, through February 24, 2014, Thebo denied Plaintiff his meals.  Thebo threatened to use a taser

on Plaintiff if he filed any grievances against him.  Thebo also denied Plaintiff access to grievance forms

for a four and one-half week period.

        Defendants now move for summary judgment as to all but three of Plaintiff's claims on

the ground that Plaintiff has failed to properly exhaust his administrative remedies.[1]


## LEGAL STANDARD

        Summary judgment "shall" be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(a).  A party moving for summary judgment can satisfy its burden by demonstrating "that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential

element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini*

*v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317,

325 (1986)).  The fact that the evidence may be controlled or possessed by the moving party does not

change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably

---

[1]  The three claims which Defendants are not asserting should be dismissed on exhaustion grounds are: (1) Defendant Wood "depriv[ed] Plaintiff of attending disciplinary hearings"; (2) Defendant Wood made inappropriate sexual comments while watching Plaintiff shower; and (3) Defendant Huss forced Plaintiff to participate in the Incentives in Segregation Program.

find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324).  While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001).  "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.        Exhaustion**

Pursuant to 42 U.S.C. § 1997e(a), a prisoner asserting an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust all available administrative remedies.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their

complaints. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.* With respect to what constitutes proper exhaustion, the Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion" defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated that

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

Michigan Department of Corrections Policy Directive 03.02.130 articulates the applicable grievance procedures for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or such is inapplicable), the prisoner may submit a Step I grievance. *Id.* The grievance policy provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R. The prisoner must submit the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

In support of their motion, Defendants have submitted evidence concerning fifty-two (52) grievances which Plaintiff filed during the relevant time period. An examination of these various grievances reveals the following.

A.    Premature Grievances

Where an inmate files a civil action in federal court before completing the available administrative processes, his complaint (or certain claims therein) must be dismissed for failure to properly exhaust administrative remedies. *See, e.g., Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) ("we must dismiss plaintiff's complaint because he filed his federal complaint before allowing the administrative process to be completed"); *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir., Dec. 17, 1998) (inmate's "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a)"); *Hopkins v. Ohio Department of Corrections*, 84 Fed. Appx. 526, 527 (6th Cir., Dec. 4, 2003) ("[w]hen a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate" because "[e]xhaustion may not be completed after

a federal complaint has been filed"); *Zimmerman v. Hardiman*, 2014 WL 806388 at \*1 (W.D. Mich., Feb. 28, 2014) (same).

According to MDOC policy, "[t]he total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II."  Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ S (effective July 9, 2007).  MDOC policy further provides that if prison officials fail to timely respond to a grievance, the inmate may proceed to the next step in the grievance process.  *See* Mich. Dep't. of Corr., Policy Directive 03.02.130 ¶ T.

In circumstances in which a prisoner initiates legal action prior to receiving a response to his Step III grievance, but after the expiration of the aforementioned 120 day period, the Court has determined that such constitutes proper exhaustion of available administrative remedies.  As the Court has observed, to conclude otherwise would permit MDOC officials to easily obtain the dismissal of *every* lawsuit filed by a prisoner who properly complies with the MDOC's grievance policies.  MDOC officials would need only ignore every Step III grievance until after the expiration of the 120 day period and simply wait until the prisoner files a lawsuit.  Once the prisoner files a lawsuit, MDOC officials could then issue a response to the Step III grievance and claim that the lawsuit must be dismissed because it was filed before the inmate completed the administrative process.  On the other hand, where a prisoner initiates legal action before either (a) receiving a Step III grievance response or (b) the completion of the 120-day period, the grievance in question cannot serve to exhaust any of the claims in question.

Defendants have submitted evidence that Plaintiff initiated the present action before the grievance process was completed with respect to 24 of the 52 grievances Plaintiff filed during the relevant time period. (Dkt. #26 at Page ID# 171-76). The grievances in question are:

| | | | |
|---|---|---|---|
| (1) | ICF-14-05-0918-01h | (2) | ICF-14-04-0909-01i |
| (3) | ICF-14-04-0840-15d | (4) | ICF-14-05-0919-17i |
| (5) | ICF-14-05-0950-11c | (6) | ICF-14-04-0841-17i |
| (7) | ICF-14-04-0908-28a | (8) | ICF-14-04-0819-09c |
| (9) | ICF-14-04-0917-28b | (10) | ICF-14-04-0745-22g |
| (11) | ICF-14-03-0617-15b | (12) | ICF-14-04-0734-27b |
| (13) | ICF-14-02-0442-15b | (14) | ICF-14-03-0577-17c |
| (15) | ICF-14-03-0463-28c | (16) | ICF-14-02-0242-01h |
| (17) | ICF-14-03-0462-28c | (18) | ICF-14-02-0441-28a |
| (19) | ICF-14-02-0241-12b4 | (20) | ICF-14-02-0318-21c |
| (21) | ICF-14-01-0031-09a | (22) | ICF-14-02-0317-28e |
| (23) | ICF-14-02-0382-28e | (24) | ICF-14-01-0042-17i |

(Dkt. #26 at Page ID# 171-76).

Plaintiff initiated these particular grievances between the dates of January 6, 2014, and May 1, 2014. Thus, the soonest the administrative process could have been completed as to any of these grievances was: (1) the date on which Plaintiff received a Step III grievance response, or (2) the expiration, on May 6, 2014, of the 120-day grievance response period applicable to the January 6, 2014 grievance. When Plaintiff initiated the present lawsuit on April 17, 2014, however, he had neither received a Step III grievance response to any of the subject grievances nor had the 120-day period expired. Simply stated, when Plaintiff initiated the present action, the MDOC grievance process had not been completed as to these 24 grievances. Accordingly, none of these grievances can serve to exhaust any of the claims asserted in Plaintiff's complaint.

> B. Inapplicable Grievances

Defendants have submitted evidence that 27 of the 52 grievances Plaintiff filed during

the relevant time period do not concern the claims asserted in Plaintiff's complaint.  (Dkt. #26 at Page

ID# 266-390, 395-404).  The grievances in question are:

| | | | |
|---|---|---|---|
| (1) | ICF-13-12-2298-17g | (2) | ICF-13-11-2249-07z |
| (3) | ICF-13-12-2356-27z | (4) | ICF-13-11-2215-15b |
| (5) | ICF-13-11-2214-17i | (6) | ICF-13-11-2250-03f |
| (7) | ICF-13-11-2206-17c | (8) | ICF-13-11-2217-28j |
| (9) | ICF-13-101962-17c | (10) | ICF-13-10-2038-09b |
| (11) | ICF-13-10-1961-24z | (12) | ICF-13-10-2037-09e |
| (13) | ICF-13-09-1807-01h | (14) | ICF-13-09-1764-7z |
| (15) | ICF-13-09-1788-9a | (16) | ICF-13-08-1602-24b |
| (17) | ICF-13-09-1699-28e | (18) | ICF-13-05-1106-26i |
| (19) | ICF-13-05-1018-15z | (20) | ICF-13-04-0906-28a |
| (21) | ICF-13-04-0833-19z | (22) | ICF-13-05-1063-14e |
| (23) | ICF-13-05-1111-28c | (24) | ICF-13-04-0749-19z |
| (23) | ICF-13-05-0997-22z | (24) | ICF-13-05-1946-15z |
| (23) | ICF-13-12-2294-28i | | |

(Dkt. #26 at Page ID# 266-390, 395-404).

None of the allegations in these grievances correspond with any of the claims asserted

in Plaintiff's complaint.  In this respect, it is important to note that Plaintiff asserts in this action

numerous claims of unlawful retaliation.  While certain of these grievances concern the alleged conduct

underlying Plaintiff's retaliation claims, in none of these grievances does Plaintiff allege that the

individuals in question undertook the conduct in question for retaliatory purpose.  This distinction is

significant.  *See, e.g., Ward v. Luckey*, 2013 WL 5595350 at *2 (E.D. Mich., Oct. 11, 2013) ("[i]t is not

enough for Ward to show only that an underlying grievance was filed; he must show that he exhausted

his administrative remedies with respect to the *retaliation* claim"); *Jordan-El v. Harrington*, 2006 WL

1791261 at *3 (E.D. Mich., May 25, 2006) ("[s]ince retaliation is a separate form of misconduct or

mistreatment, the plaintiff was required to give prison officials fair notice of a First Amendment

retaliation claim").  Thus, these grievances cannot serve to exhaust any of the claims asserted in

Plaintiff's complaint.

C.      Grievance ICF-13-04-0905-17c

Plaintiff initiated this grievance on April 23, 2013, against Defendant Moran.  (Dkt. #26 at Page ID# 391-94).  Specifically, Plaintiff alleged that Moran was subjecting him to sexual harassment and failing to provide him with adequate treatment.  (Dkt. #26 at Page ID# 394).  Plaintiff also alleged that Moran was "not treating me because of my complaints against the prison."  (Dkt. #26 at Page ID# 394).  This is sufficient to put prison officials on notice that Plaintiff was asserting a retaliation claim. Plaintiff pursued this grievances through all three steps of the prison grievance process.   In his complaint, Plaintiff alleges that Moran "engaged in retaliation" by refusing to properly assess his disorders or transfer him to a "proper treatment facility."   This grievance is sufficient, therefore, to exhaust this particular claim.

D.      Plaintiff's Motion to Conduct Discovery

Plaintiff, despite being afforded more than six months to respond, has failed to present any evidence in opposition to Defendants' motion.  Instead, Plaintiff moves for a continuance so that he can obtain certain, albeit unidentified, discovery.  (Dkt. #51).  Federal Rule of Civil Procedure 56(d) provides that if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition," the Court may defer resolution of the motion and/or permit the nonmovant to obtain discovery.

Plaintiff asserts two general bases in support of his request for additional discovery. First, Plaintiff asserts that Defendants failed to respond to his previously submitted request for production of documents.  The Court has previously addressed this issue.  On February 20, 2015, the Court granted a motion by Plaintiff to compel Defendants to respond to certain requests for the

production of documents. (Dkt. #45). Defendants timely complied with the Court's Order. (Dkt. #46).

Plaintiff also objects to Defendants' responses to certain interrogatories. The Court has likewise

previously addressed this issue denying Plaintiff's motion to compel. (Dkt. #60). Defendants properly

declined to respond to discovery requests which did not concern resolution of the issue of exhaustion

of administrative remedies. To the extent that Plaintiff's discovery requests were limited to the issue

of exhaustion, Defendants' responses thereto are appropriate. While Plaintiff may lament that he did

not obtain more significant information in discovery, such is the result of his inadequate requests not

any improper conduct by Defendants.

In sum, neither of Plaintiff's arguments in favor of Rule 56(d) relief are persuasive.

Furthermore, Plaintiff has failed to describe or identify any additional discovery that could possibly

result in denial of Defendants' motion. *See, e.g., Saulsberry v. Federal Express Corp.*, 552 Fed. Appx.

424, 427-28 (6th Cir., Jan. 10, 2014) ("mere speculation that there is some relevant evidence not yet

discovered will never suffice" to prevail on a Rule 56(d) motion). Accordingly, the undersigned

recommends that Plaintiff's motion be denied.

E.     Exhaustion Summary

As noted, Defendants move for summary judgment as to all but three of Plaintiff's claims

on the ground that Plaintiff has failed to properly exhaust his administrative remedies. For the reasons

discussed above, the undersigned recommends that Defendants' motion be granted in part and denied

in part. Specifically, the undersigned recommends that Defendant's motion be granted except as to

Plaintiff's claim that Defendant Moran refused to properly assess his disorders or transfer him to a

"proper treatment facility." Thus, the undersigned recommends that Plaintiff's claims be dismissed for

failure to properly exhaust administrative remedies save the following four claims: (1) Defendant Wood "depriv[ed] Plaintiff of attending disciplinary hearings"; (2) Defendant Wood made inappropriate sexual comments while watching Plaintiff shower; (3) Defendant Huss forced Plaintiff to participate in the Incentives in Segregation Program; and (4) Defendant Moran refused to properly assess Plaintiff's disorders or transfer him to a "proper treatment facility."

**II.          Failure to State a Claim**

Because Plaintiff is proceeding as a pauper, his claims are subject to dismissal if such fail to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2) ("the court shall dismiss the case at any time if the court determines that. . .the action or appeal. . .fails to state a claim on which relief may be granted"). To avoid dismissal for failure to state a claim, Plaintiff must allege in his complaint *facts* sufficient to "give the defendant fair notice of what the. . .claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must likewise articulate facts sufficient to allege a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim

-16-

for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

As previously noted, the Court concludes that four of the claims asserted in Plaintiff's complaint are not subject, at least at this juncture, to dismissal on exhaustion grounds. Of these four claims, however, the Court finds that two must be dismissed for failure to state a claim.

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Plaintiff alleges that Defendant Wood retaliated against him by making inappropriate sexual comments while he showered. Prisoners do not have a constitutional right to be free from verbal abuse. *See, e.g., Wingo v. Tennessee Department of Corrections*, 499 Fed. Appx. 453, 455 (6th Cir., Sept. 7, 2012) (verbal harassment is insufficient to maintain a § 1983 claim). Likewise, verbal abuse does not constitute adverse action sufficient to maintain a claim of unlawful retaliation. *See, e.g., Taylor v. City of Falmouth*, 187 Fed. Appx. 596, 600 (6th Cir., July 10, 2006); *Odom v. Howes*, 2013 WL 2558764 at *10 (W.D. Mich., June 11, 2013). Accordingly, the undersigned recommends that this particular claim be dismissed for failure to state a claim on which relief may be granted.

Plaintiff also alleges that Defendant Huss retaliated against him by forcing him to participate in the Incentives in Segregation Program.  The purpose of the Incentives in Segregation Program "is to motivate prisoners to demonstrate appropriate behavior by offering incentives that encourage positive adjustment."  *Patterson v. Heyns*, 2014 WL 5392057 at *1 (W.D. Mich., Oct. 23, 2014) (quoting the the Incentives in Segregation Program Manual); *see also*, *McGraw v. Turner*, 2011 WL 5412910 at *1 (W.D. Mich., Nov. 8, 2011) (the Incentives in Segregation Program "is designed to reduce the overall length of segregation placement" by providing prisoners incentives "when they demonstrate good behavior").  Whether an alleged adverse action is sufficient to deter a person of ordinary firmness "is generally a question of fact," but when the alleged adverse action is "inconsequential, resulting in nothing more than a de minimis injury, the claim is properly dismissed as a matter of law.  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012).  Forcing Plaintiff to participate in a program intended to reduce the length of time he spends in segregation is an inconsequential de minimis injury.  Accordingly, the undersigned recommends that this particular claim be dismissed for failure to state a claim on which relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Plaintiff's Motion to Defer Defendants' Motion for Summary Judgment, (Dkt. #51), be **denied** and Defendants' Motion for Summary Judgment, (Dkt. #25), be **granted in part and denied in part**.  Specifically, the undersigned recommends that Plaintiff's claims be dismissed for failure to properly exhaust administrative remedies save the following claims: (1) Defendant Wood "depriv[ed] Plaintiff of attending disciplinary hearings"; (2) Defendant Wood made inappropriate sexual comments while

watching Plaintiff shower; (3) Defendant Huss forced Plaintiff to participate in the Incentives in Segregation Program; and (4) Defendant Moran refused to properly assess Plaintiff's disorders or transfer him to a "proper treatment facility."

With respect to these four claims, the undersigned further recommends that the following two claims be dismissed for failure to state a claim on which relief may be granted: (1) Defendant Wood made inappropriate sexual comments while watching Plaintiff shower and (2) Defendant Huss forced Plaintiff to participate in the Incentives in Segregation Program.  The undersigned further recommends that appeal of this matter would not be taken in good faith.  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date:  September 2, 2015                   /s/ Ellen S. Carmody
                                           ELLEN S. CARMODY
                                           United States Magistrate Judge